## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

NOLAN KINARD FLOYD, SR.,

    Plaintiff,

    v.

HEARING OFFICER THOMAS WILLIAMS
and
CORPORAL ADEWALE KASSIM,

    Defendants.

Civil Action No. TDC-22-0632

## MEMORANDUM OPINION

Self-represented Plaintiff Nolan Kinard Floyd, Sr., an inmate at the Western Correctional Institution in Cumberland, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 in which he challenges disciplinary charges brought against him while he was incarcerated at the Maryland Reception, Diagnostic, and Classification Center ("MRDCC") in Baltimore, Maryland. Defendants Hearing Officer Thomas Williams and Corporal Adewale Kassim have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Although Floyd was notified of his right to file a memorandum in opposition to the Motion, he has not done so. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

In his Complaint, Floyd alleges that on February 22, 2020, he was involved in a verbal confrontation with Cpl. Kassim at lunchtime. When Cpl. Kassim arrived at Floyd's cell to pick up his lunch tray, he asked Floyd if he had a tray or trash. In response, Floyd stated, "you know I

have a tray you gave me one." Compl. at 2, ECF No. 1.  According to Floyd, Cpl. Kassim then stated, "I don't have time for this you are gonna get what you have coming." *Id.* Floyd became offended and stated that he intended to slide the trash under the door if Cpl. Kassim did not take it from him.  Floyd states that Cpl. Kassim did not collect the trash, so Floyd then slid the trash under the door.

In contrast, Cpl. Kassim reported that during this encounter, Floyd stated, "I will stab you like I done to other officers before" and then threw food on Cpl. Kassim's shoes from under his cell door.  Notice of Inmate Rule Violation at 1, Mot. Dismiss Ex. 3, ECF No. 17-5.  On the date of this incident, Cpl. Kassim issued Floyd a Notice of Inmate Rule Violation ("the Notice").  The Notice charged Floyd with a violation of Rule 104 for making threats that included physical harm to objects, property, or individuals.

On February 26, 2020, MRDCC held a disciplinary hearing on the incident before Hearing Officer Williams.  Floyd requested that MRDCC present video footage of the interaction during the hearing "to validate his innocence," Compl. at 3, but no video was presented because Hearing Officer Williams found that there was "[n]o video footage in this case per the facility representative."  Inmate Hearing Record at 2, Mot. Dismiss Ex. 2, ECF No. 17-4.  Floyd also requested to call another inmate, Jerrod Allen, as a witness.  Floyd was permitted to question Allen during the hearing, and Allen testified that none of the food struck Cpl. Kassim.  Ultimately, Hearing Officer Williams found that Cpl. Kassim was credible and reliable and that Floyd had threatened him in violation of Rule 104.  At the end of the hearing, Hearing Officer Williams found Floyd guilty of the charge against him.  Floyd was sentenced to 89 days on disciplinary segregation and 180 days without visitation privileges.

In the Complaint, Floyd asserts pursuant to 42 U.S.C. § 1983 that through these events, Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, including by committing perjury during the hearing.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment in their favor under Rule 56. In support of their Motion, Defendants assert that: (1) Floyd failed to exhaust administrative remedies; (2) Floyd has failed to allege plausible claims under the First or Fifth Amendment; (3) they are entitled to dismissal or summary judgment on the Eighth and Fourteenth Amendment claims because Floyd has either failed to allege sufficient facts, or he has failed to present sufficient evidence, to support those claims; and (4) Defendants are entitled to qualified immunity.

## I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants filed their Motion as a motion to dismiss or, in the alternative, for summary judgment. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the Court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of the Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Floyd has not asserted that he needs discovery in order to address the Motions. The Court will thus construe Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II.   Exhaustion of Administrative Remedies

As threshold matter, Defendants assert that Floyd has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2018):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide relief to

5

aggrieved inmates," (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use," or (3) prison administrators actively "thwart" inmates from filing grievances through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44. Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

Here, where Floyd challenges his disciplinary proceedings, there is a formal appeal process for such determinations that requires the filing of a written appeal with the "managing official of the facility" and then a second appeal to the Inmate Grievance Office ("IGO"). Md. Code Regs. §§ 12.03.01.30(A)(2), 12.03.01.30(C) (2022). Specifically, an inmate may file a written appeal to the "managing official" within 15 days of the hearing officer's decision. Md. Code Regs. § 12.03.01.30(A)(2). An inmate may then appeal the decision of the managing official to the IGO. Md. Code Regs. § 12.03.01.30(C).

In his verified Complaint, Floyd asserts that he appealed Hearing Office Williams's ruling and also filed a complaint with the IGO. In contrast, the IGO Director, F. Todd Taylor, Jr., has submitted a declaration attesting that Floyd did not file any grievance with the IGO relating to the allegations in his Complaint. Because "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge," the Court may consider Floyd's account on this point. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Accordingly, where there is a factual dispute as to whether Floyd fully exhausted administrative remedies, the Court will not grant the Motion on this basis and will instead turn to the merits of Floyd's claims.

### III.     First and Fifth Amendments

In the Complaint, Floyd alleges violations of the First and Fifth Amendments but he has not alleged any facts in support of those claims. None of the allegations relate to issues of freedom of speech, freedom of the press, or freedom of religion. *See* U.S. Const. amend. I. Although Floyd has alleged due process violations, because MRDCC is a state correctional institution, such a claim is properly asserted under the Fourteenth Amendment, not the Fifth Amendment. Accordingly, the claims under the First and Fifth Amendments will be dismissed for failure to state a claim.

### IV.     Eighth Amendment

Construed liberally, Floyd's assertion of an Eighth Amendment claim is deemed to be a claim that Cpl. Kassim's treatment of Floyd during the encounter on February 22, 2020, and the sanction imposed, constitute cruel and unusual punishment.

The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. Here, the incident at Floyd's cell at MRDCC on February 22, 2020 was at most a verbal altercation, and the only allegation of any physical interaction is Cpl. Kassim's claim that he was struck by the Floyd's trash. "Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979)). The conduct during that incident therefore does not support an Eighth Amendment claim.

As for the disciplinary sanction of 89 days on disciplinary segregation and 180 days without visitation, Floyd has cited no authority supporting the argument that such standard forms of punishment for inmate rule violations constitute cruel and unusual punishment. Further, he has alleged no facts about the specific circumstances of disciplinary segregation at MRDCC that would demonstrate that they are so extreme as to potentially violate the Eighth Amendment. *See Rhodes*

*v. Chapman*, 452 U.S. 337, 347 (1981) (stating that conditions of confinement could violate the Eight Amendment if they "deprive inmates of the minimal civilized measures of life's necessities"). The Court will therefore dismiss Floyd's Eighth Amendment claim.

## V.     Fourteenth Amendment

Floyd's primary claim appears to be that his due process rights under the Fourteenth Amendment were violated at the disciplinary hearing, including when Hearing Officer Williams denied him the opportunity to present video footage of the incident. Although an inmate or detainee retains rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution, so the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, before certain sanctions can be imposed, minimum requirements of due process must be satisfied, including: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing at which the prisoner has the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See id.* at 564–66, 570–71. In such a hearing, there is no constitutional right to confront and cross-examine witnesses or to be represented by retained or appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). The disciplinary determination must contain a written statement of the evidence upon which the hearing officer relied and the reasons for the decision. *See Baxter*, 425 U.S. at 323 n.5. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, Floyd's due process claim fails for two reasons. First, the due process protections described above are required only when a disciplinary proceeding results in sanctions which implicate a protected liberty interest, such as a loss of good time credits that would lengthen the overall period of incarceration. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995); *Wolff*, 418 U.S. at 558. A disciplinary proceeding resulting in a sanction of time in disciplinary segregation does not alone implicate these due process requirements absent a showing that placement in such confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 477–78, 484–86. Floyd has made no allegations that would support the conclusion that the conditions in the disciplinary segregation to which he was subjected were so severe as to meet this standard.

Second, even if there Court assumes that the sanction imposed required due process protections, the record demonstrates that they were satisfied. Floyd acknowledges that he was served with the Notice by Cpl. Kassim. Further, the record shows that Floyd attended the hearing and was given the opportunity to examine his witness, and that Hearing Officer Williams provided a written statement of the evidence relied upon and his findings. The only remaining issue is whether Floyd was improperly denied the opportunity to present evidence when he requested that video footage of the incident be presented at the hearing, but MRDCC did not arrange for that to occur. The Inmate Hearing Record, however, states that a "facility representative" reported that no video footage existed to be presented at the hearing. Inmate Hearing Record at 2.

In *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019), the United States Court of Appeals for the Fourth Circuit held that procedural due process protections include a qualified right to access video surveillance evidence. *Id.* at 270. The court stated, "[I]f prison officials decide to deny an inmate access to . . . video surveillance evidence on the grounds that such evidence is not pertinent

to the inmate's alleged violation, then that determination must be made by the disinterested hearing officer, not prison officials involved in lodging the charge." *Id.* at 271. However, where the requested video evidence did not exist, there is no due process violation. *See id.* at 279.

Although the record shows that Floyd did request video evidence before the disciplinary hearing, it also provides evidence that the reason that no video was presented was because it did not exist. Floyd has identified no evidence to the contrary. Accordingly, the Court will grant summary judgment to Defendants on the Fourteenth Amendment due process claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED. Floyd's First, Fifth, and Eighth Amendment claims will be DISMISSED, and summary judgment will be entered in favor of Defendants on the Fourteenth Amendment claim. A separate Order shall issue.

Date:  August 29, 2023

THEODORE D. CHUANG
United States District Judge

10